698 So.2d 456 (1997)
STATE of Louisiana
v.
Nathan LEWIS.
No. 97-KA-160.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1997.
*457 Christopher A. Aberle, Louisiana Appellate Project, Mandeville, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Nathan Lewis, appeals his conviction and sentence for attempted second degree murder. We affirm.
On June 8, 1995, the Jefferson Parish District Attorney filed a bill of information charging Nathan Lewis with attempted second degree murder, a violation of LSA-R.S. 14:27 and 14:30.1. Defendant was arraigned on July 20, 1995, and pled not guilty.
*458 On October 26, 1995, defendant filed a motion to appoint a sanity commission. The trial court granted defendant's motion. After a sanity hearing on December 14, 1995, the trial judge found defendant competent to stand trial.
On July 23, 1996, defendant waived trial by jury, and was tried by Judge Robert Burns. After hearing all the evidence, the trial court found defendant guilty as charged. On August 19, 1996, the trial court sentenced defendant to serve thirty years at hard labor without benefit of parole, probation, or suspension of sentence. On the same day, the state filed a habitual offender bill of information, alleging defendant to be a second felony offender. Defendant was arraigned on the multiple bill on August 19, 1996, and denied the state's allegations.
A hearing on the multiple offender bill was held on September 19, 1996, and the court found defendant to be a second felony offender. On the same day, the trial court vacated the original sentence, and again sentenced defendant to thirty years at hard labor on the multiple bill, without benefit of parole, probation, or suspension of sentence. Defendant filed an oral motion for appeal, which he supplemented in writing on November 7, 1996.
Ms. Loretta Hayes testified that on the evening of April 15, 1995, she was at her apartment on Tensas Drive in Harvey with her two young daughters and her minor brother. At about 11:30 p.m., defendant, Nathan Lewis, knocked on her door. Defendant and Hayes had been acquainted since childhood, and had been recently involved in a social relationship. Ms. Hayes let defendant into the apartment.
Ms. Hayes testified that defendant asked to borrow a hammer to fix the tire on his car. She did not have a hammer, but offered him a pair of pliers. According to Hayes, the two conversed briefly in the living room, then defendant asked her to retrieve his Bible from her bedroom. Hayes complied, and as she returned to the living room, defendant attacked her. Hayes testified that, unprovoked, defendant hit her in the right temple with the pliers. He then tried to suffocate her by using his hands and a pillow.
Ms. Hayes freed herself and ran into the kitchen. She picked up a pot of hot cooking oil from the stove, and threw it on defendant, burning his chest. Defendant picked up a butcher knife, and stabbed her in the abdomen and right arm. He discarded the knife and fled the premises; Ms. Hayes telephoned 9-1-1 and her mother, and reported that Nathan Lewis had stabbed her. Ms. Hayes was taken to West Jefferson Hospital, where she underwent surgery to repair damage to her small intestine, large intestine, arm, and iliac artery.
Defendant's testimony was that he and Ms. Hayes had lived together in the recent past, and still saw each other occasionally during the months leading up to the stabbing. On the night of April 15, he and Hayes had sexual intercourse in her bedroom. When he inadvertently addressed her by the name of another girlfriend, she became angry and physically attacked him. Ms. Hayes doused him with hot cooking oil in the kitchen, and cut him with a knife. According to defendant, he became enraged, grabbed the knife from Ms. Hayes, and stabbed her repeatedly. Defendant denied having hit Ms. Hayes on the head. However, Dr. Robert Batson testified that Ms. Hayes was treated for head trauma.
In his first assignment of error defendant argues that the district court erred by concluding that he failed to establish by a preponderance of the evidence the presence of mitigating factors required to reduce the charge of attempted second degree murder to attempted manslaughter.
Defendant argues that the evidence at trial supported a verdict of guilty of attempted manslaughter. Manslaughter is defined, in pertinent part, as a killing committed in sudden passion or heat of blood sufficient to deprive the average person of his self-control and cool reflection. LSA-R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" distinguish manslaughter from murder, but they are not elements of the offense. Rather, they are mitigatory factors which may act to reduce the grade of the offense. State v. Smith, 95-734 (La.App. 5 Cir. 1/30/96), 668 So.2d 1260; State v. *459 Thorne, 93-859 (La.App. 5 Cir. 2/23/94), 633 So.2d 773. To be entitled to the lesser verdict of attempted manslaughter, defendant was required to prove these mitigatory factors by a preponderance of the evidence. State v. Allen, 94-1941 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433; State v. Clark, 93-2090 (La.App. 4 Cir. 5/17/94), 637 So.2d 1140.
The determination of whether sufficient provocation existed for the reduction of the grade of the offense to manslaughter is a question to be determined by the fact-finder in the case. State v. Hudson, 570 So.2d 504 (La.App. 5 Cir.1990). The trial judge was the fact-finder in this case. Because the defendant and Ms. Hayes gave differing versions of the events leading up to the stabbing, the trial judge was required to assess the credibility of the witnesses.
It is the trial court's role to weigh the respective credibilities of the witnesses, and this court should not second-guess those credibility determinations beyond the sufficiency evaluations under the standard of review required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) infra. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). After hearing the testimony of both the defendant and Ms. Hayes the trial judge apparently found no evidence which would justify provocation. The evidence in this case supports this finding as rational, accordingly we find no merit in this assignment of error.
Defendant argues in his second assignment of error that the evidence was insufficient to establish beyond a reasonable doubt that Lewis harbored a specific intent to kill Loretta Hayes.
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nguyen 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988. To prove attempted second degree murder, the state must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. LSA-R.S. 14:30.1, LSA-R.S. 14:27; State v. Andrews, 95-129 (La.App. 5 Cir. 11/15/95), 665 So.2d 454. Defendant himself admitted at trial that he stabbed Ms. Hayes, thus establishing the "overt act". Defendant argues, however, that the state did not prove specific intent to kill.
Specific criminal intent is a state of mind, and, as such, need not be proven as fact but may be inferred from the circumstances and the actions of the accused. State v. Meyers, 95-750 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378; State v. Nguyen, 95-1055 (La.App. 5 Cir. 3/26/96), 672 So.2d 988, writs denied, 96-1019 (La.10/4/96), 679 So.2d 1377; 96-2087 (La.10/7/96), 680 So.2d 639. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982); State v. Meyers, supra; State v. Hill, 93-405 (La.App. 5 Cir. 3/29/94), 636 So.2d 999, writ denied, 94-3144 (La.9/1/95), 658 So.2d 1259.
In the instant case, the intent to kill may be inferred from the extent and severity of the victim's injuries. Dr. Robert Batson, the surgeon who treated Ms. Hayes at West Jefferson Hospital, testified that she suffered multiple perforations of the large and small intestines. She also had multiple stab wounds in her right forearm which caused deep lacerations in the muscle and blood vessels. The knife passed almost entirely through her forearm, creating a deep wound about eight to ten inches in length. There was nerve damage, and she now suffers loss of mobility in her hand. Ms. Hayes also suffered blunt trauma to the right temple, which she testified was inflicted by defendant when he hit her with a pair of pliers. This injury has caused her to experience blurred vision.
*460 The most serious injury Ms. Hayes sustained was the puncture of the left iliac artery, which is the main blood vessel leading from the aorta. Dr. Batson testified that this injury was life threatening, as it caused a considerable amount of bleeding. Ms. Hayes in fact lost one thousand cubic centimeters of blood, and would have lost more, had the bleeding not been somewhat contained by the surrounding tissues. In cases of injuries to the aorta or iliac artery, the survival rate is generally fifty percent. According to Dr. Batson, the iliac artery lies at the back of the abdominal cavity, near the spine. Such an injury would have been caused by the plunging of a knife deep into Ms. Hayes' abdomen. Not only did defendant cause Ms. Hayes serious injury, but he fled the scene without seeking medical assistance for her.[1]
In State v. Weiland, 562 So.2d 950 (La. App. 5 Cir.1990), this Court held that specific intent to kill might reasonably be implied from intentional use of a deadly weapon to produce injuries involving serious risk of death. In that case, the defendant stabbed the victim repeatedly with a bayonet, and the victim later died. This Court found the severity of the inflicted injuries was sufficient to prove the specific intent necessary to support defendant's manslaughter conviction. The severity of Ms. Hayes injuries combined with defendant's testimony regarding their intentional nature is enough in the instant case to support a reasonable inference that defendant had the necessary intent to commit attempted second degree murder. It appears that a rational trier of fact, viewing the foregoing evidence in the light most favorable to the prosecution, would find the elements of attempted second degree murder were proven beyond a reasonable doubt. Therefore we find no merit in the defendant's second assignment of error.
In accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975), we have conducted a review for errors patent. The record in this case shows one sentencing error. The trial court properly granted defendant credit for time served at the time of his initial sentencing, on August 19, 1996. Additionally, the commitment for defendant's September 19, 1996 multiple bill sentence reflects that defendant was granted credit for time served as to his sentence on the multiple bill. However, the transcript of the multiple bill sentencing does not show that the trial court granted credit for time served with respect to the enhanced sentence. Where there is a discrepancy between the minute entry and the transcript, the transcript will prevail. State v. Lynch, 441 So.2d 732 (La.1983). This is not a reversible error, we therefore instruct the district court to amend the record as required by LSA-C.Cr.P. art. 880 to reflect that the defendant is given credit for the time that he has already served, and we affirm the judgment of the trial court.

DECREE
Accordingly, the conviction is affirmed and the sentence is amended to give credit for time served and affirmed as amended.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Defendant testified that, had he realized how severe Ms. Hayes' injuries were, he would have called for help.