| Judge MIRIAM G. WALTZER.
Defendant, Derek Temple, appeals his conviction and sentence for possession with intent to distribute cocaine.
STATEMENT OF THE CASE
Defendant Derek Temple was charged by bill of information on 6 February 1997 with one count of possession with the intent to distribute cocaine in violation of LSA-R.S. 40:967(B)(1). Defendant pled not guilty at his 14 February 1997 arraignment. On 7 April 1997 the trial court heard arguments on defendant’s motion to suppress the evidence.[1] On 30 April 1997 a twelve-person jury found Temple guilty as charged. On 10 September 1997 a hearing was held on the multiple' bill of information, charging Temple as a fourth felony offender. The court subsequently found Temple to be a fourth felony offender. On 7 November 1997, Temple was sentenced to life imprisonment without the benefit of probation or suspension of sentence. On the same date the trial court granted Temple’s oral motion for appeal. This court in an unpublished opinion dismissed Temple’s first appeal on 30 June 1999. The trial court granted an out-of-time appeal on 30 June 2000 pursuant to this court’s order.

¡¿STATEMENT OF FACTS

On 18 October 1996, at approximately 11:30 p.m. Officers Christopher Davis and Patrick Garner of the Sixth District responded to an attempted burglary call at a residence in the 600 block of Felicity in the St. Thomas housing project.
Officer Davis testified that as he and Officer Garner returned to their vehicle they noticed four individuals sitting on a porch. Officer Davis further testified that when one of the individuals saw him he quickly stood against the wall in an effort not to be seen. Officers Davis and Garner then informed Officer Hudson Cutno, who joined the other officers to surround and *740 question the four individuals. Officer Davis testified that the area is known and documented for narcotic activity.
Officer Davis testified that when they approached the individuals, Christine Johnson, the only female, sat down on the porch and the defendant sat next to her. Officer Davis saw the defendant remove a white object from his pocket and help Johnson place the object in her pocket. All four individuals were detained.
Officer Davis radioed Officer Lizell Brooks, a female officer, to conduct a pat down search of Johnson. Officer Brooks seized one hundred forty-one pieces of rock cocaine and sixty bags of powder cocaine from Johnson.
The defendant, Johnson, and the other two individuals were taken to the Sixth District police station. After signing a rights-of-arrestee form, Johnson gave a statement at the Sixth District station. Johnson stated that when Officers Davis and Garner approached the group, the defendant put a bag full of drugs into her pocket. When Officer Brooks arrived on the scene, Johnson told her the defendant had placed something in her pocket.

¡¿ERRORS PATENT

There are no errors patent.
DISCUSSION[2]
The defendant complains the trial court erred in failing to grant his motion to suppress the drugs seized from Johnson and his motion to suppress Johnson’s statement.. Specifically, he argues that the officers lacked reasonable suspicion to make an investigatory stop.
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. A trial judge’s decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of the evidence. State v. Adams, 99-2123, p. 4 (La.App. 4 Cir. 2/16/01), 779 So.2d 113, 117. In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at a suppression hearing, but may consider all pertinent evidence adduced at trial. Adams, supra 99-2123, p. 4, 779 So.2d at 117, citing State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272.
LSA-R.S.C.Cr.P. art. 215.1 provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and demand of him his name, address, and an explanation of his actions.
This court in State v. Anderson, 96-0810, p. 2 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, 106, noted:
A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion ¡¿that the person is, has been, or is about to be engaged in criminal conduct. Reasonable suspicion for an investigatory stop is something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual’s right to be free from governmental interference. The totality of the circum *741 stances must be considered in determining whether reasonable suspicion exists. An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct.
(Citations omitted)
Though law enforcement officers are given the discretion to stop a person and investigate suspicious activity, it is juxtaposed against an individual’s rights under the Fourth Amendment of the United States Constitution and the Louisiana Constitution Art.l, Section 5, which provides in part:
Every person shall be secure in his person, property, communications, houses papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose for the search. Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court.
The defendant in the instant matter has standing to raise the illegality of the search and seizure conducted on Christine Johnson because they adversely affected him.
Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that the Seizure be reasonable. State v. Flowers, 441 So.2d 707 (La.1983), citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize’ as reasonable. State v. Poche, 99-0039 (La.App. 4 Cir. 5/5/99) 733 So.2d 730, 733.
In assessing whether the police had reasonable grounds to make an investigatory stop, “[a] reviewing court must take into account the ‘totality of the circumstances — the .whole picture,’ giving deference to the inferences and deductions of a trained police officer ‘that might well elude an untrained person.’ ” State v. Wilson, 00-0178 (La.12/8/00) (per curiam), 775 So.2d 1051, 1053, citing State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (La.1998), quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695,66 L.Ed.2d 621 (1981). The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under LSA-R.S.C.Cr.P. art. 215.1. Poche, 99-0039, 733 So.2d at 733.
Officers Garner and Davis testified both at the motion hearing and at trial that they were responding to an unrelated complaint by an unidentified caller regarding an attempted unauthorized entry, when they saw four individuals sitting on the steps in the St. Thomas housing projects. These officers, assisted by a third officer who did not testify, based their detention of these four individuals on | fiTemple’s recoil at the sight of the officers, on Temple’s *742 movements in placing an object in Johnson’s pocket and on the reputation of the neighborhood. Officer Davis saw Temple place some “white” object in Johnson’s pocket. He testified that he could not identify this object. There was no testimony that Officer Davis observed any exchange of the object for money or that he believed the object was contraband. The record does not contain any evidence that either Officer Garner or Officer Davis believed they had witnessed an illegal drug transaction. No weapons were detected when the male suspects were patted down and no drugs were found after they were searched. There is no evidence in the record that the female police officer who searched the female suspect saw a bulge that gave her reasonable suspicion to believe that there might be a weapon. Furthermore, there is no testimony on the record that the female officer felt a package she reasonably suspected contraband in the pocket of the female suspect. The female officer searched the female suspect because the male officers did not wish to search a female detainee. All the testimony adduced shows that this was a search and not a pat down for weapons for their protection.
The officers stated emphatically that the persons they ultimately searched and patted down in the St. Thomas Housing Development that night, were not suspected in the unauthorized entry complaint that had brought them to the scene in the first place. The call that brought them to the area did not concern drug dealing. The officers did not see or hear anything indicating a crime had been or was about to be committed when they stopped these four individuals. Essentially, these four individuals were stopped and searched because they recoiled from the police in a public housing development. Up to the time they recoiled, nothing untoward had been observed. Unlike the facts in Wilson, neither Officer Garner [7nor Officer Davis testified that they had extensive personal experience with similar drug activity at this particular location. Wilson, supra at 1052. Moreover, unlike the facts in Wilson, the officers did not testify that they believed that they .witnessed an illegal drug transaction. Their testimony revealed that they did not know what the four individuals were up to, but they believed that the detained individuals were acting suspiciously in a high crime area.
The trial court erred in finding that the police officers had reasonable suspicion to stop and probable cause to search the four individuals, including Johnson. Therefore, the trial court erred in denying Temple’s motion to suppress the evidence and Johnson’s statement.
Moreover, in Terry, the Supreme Court held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a pat down search to determine whether the person is in fact carrying a weapon.
A protective search, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must be strictly limited to that which is necessary for the discovery of a dangerous weapon, which the police officer reasonably suspects the suspect possesses. State v. Hughes, 99-2554 p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, 427.
If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry, and its fruits will be suppressed. State v. Sheehan, 99-0725 (La.7/2/99) (per curiam), 767 So.2d 1. If a police officer lawfully pats down a suspect’s outer clothing and feels an object *743 whose contour or mass makes its identity immediately apparent, there has been no Isinvasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons. Hughes, supra at 428, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
Officer Lizell Brooks, the female officer who conducted the pat down search of Christine Johnson, testified at trial that she was called to the scene in the instant case to conduct the search because the male officers on the scene declined to do so. The officers did not testify that Johnson was searched for weapons. Clearly, the officers were interested in the object that Officer Davis saw pass between Temple and Johnson. Unfortunately, there were no indicia preceding the search that would have entitled Officer Brooks to search Johnson. Officer Brooks testified that she found drugs in Johnson’s right front jogging suit pants pocket. Officer Brooks did not testify at the motion hearings, and her trial testimony does not indicate how the search of Johnson was conducted. Moreover, her trial testimony does not indicate whether the object in Johnson’s pants pocket created an obvious bulge or whether from touch it was obvious to determine that the object in Johnson’s pocket was contraband. Wilson, supra at 1053. Officer Brooks determined that the item in Johnson’s pocket was contraband only after a further search, one not authorized by Terry, or by any exception to the warrant requirement. State v. Lagarde, 00-1238 (La.2/9/01) (per curiam ), 778 So.2d 585. Therefore, the seizure, and the resulting statement implicating Temple, of the erack/cocaine from Johnson was unconstitutional and had to be suppressed.

CONCLUSION

For the above reasons, Temple’s conviction and sentence are reversed, and the matter is remanded for proceedings consistent with this opinion.
CONVICTION AND SENTENCE REVERSED, REMANDED.

. The trial court heard testimony on the motion to suppress on two days, 28 February 1997 and 4 April 1997.

. Temple assigned an additional assignment of error regarding the excessiveness of his sentence, but we will not address this additional assignment since our disposition of the first assignment renders the second assignment moot.